**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
DANNINE WINFIELD, individually and on
behalf of all others similarly situated,
ALEXANDRA ALLEN, and ERALDA                  **MEMORANDUM OF**
CARCANI,                                     **DECISION & ORDER**
                           Plaintiffs,       13-cv-6289 (ADS) (SIL)


              -against-


BABYLON BEAUTY SCHOOL OF
SMITHTOWN INC., doing business as
Long Island Beauty School and Hair Design
Institute, LONG ISLAND BEAUTY SCHOOL,
INC., ANTHONY CIVITANO, SALVATORE
D. PAPPACODA, and JOHN DOE ENTITIES,
Fictitious name and number unknown, all
conducting business as Long Island Beauty
School and/or Hair Design Institute,
                           Defendants.
--------------------------------------------------------X

<u>**APPEARANCES:**</u>

**LEON GREENBERG, ESQ., P.C.**
*Attorney for the Plaintiffs*
2965 South Jones Boulevard #E-4
Las Vegas, Nevada 89146

**LAW OFFICES OF LAUREN GOLDBERG, PLLC**
*Attorney for the Plaintiffs*
2014 West 84th Street
New York, NY 10024

**LITTLER MENDELSON, P.C.**
*Attorneys for the Defendants*
One Newark Center, 8th Floor
Newark, NJ 07102
        By: William P. McLane, Esq.
            Lauren J. Marcus, Esq., Of Counsel

**SPATT, District Judge**.

This case arises from allegations that students at cosmetology schools operated by the Defendants Anthony Civitano ("Civitano") and Salvatore D. Pappacoda ("Pappacoda") (collectively, the "Individual Defendants") failed to receive minimum or overtime wages for performing personal beauty services on consumers in clinics that were operated by the Individual Defendants' Schools.

On April 28, 2014, the Plaintiffs Dannine Winfield ("Winfield"), Alexandra Allen ("Allen"), and Eralda Carcani ("Carcani") (collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, commenced the present action against the Defendants Babylon Beauty School of Smithtown Inc. ("Babylon Beauty School"), Long Island Beauty School, Inc. ("Long Island Beauty School"), Civitano, Pappacoda, and John Doe Entities conducting business as Long Island Beauty School and/or Hair Design Institute, (collectively, the "Defendants"). The Plaintiffs allege that the Defendants violated: (i) the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"); (ii) Article X, Section 24 of the Florida Constitution; and (iii) Section 652 of the New York Labor Law ("NYLL").

Presently before the Court is the Defendants' motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P") 12(b)(6) to dismiss the Plaintiffs' amended complaint.

For the reasons set forth below, the Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

### A. Underlying Facts

Unless otherwise noted, the Court draws the following facts from the Plaintiffs' amended complaint and construes them in the light most favorable to the Plaintiffs.

### 1. The Parties

The Plaintiff Winfield is a resident of Suffolk County. (Am. Compl. at ¶ 4.) The Plaintiffs Allen and Carcani are Florida residents. (Id. at ¶¶ 4, 5.)

The Defendants Babylon Beauty School and Long Island Beauty School are New York corporations with principal places of business located in Suffolk County. (Id. at ¶¶ 8, 9.) They are for-profit "educational services business[es]" that offer students training in cosmetology trades, including "barbering, esthetics, . . . skin care, makeup artistry, and manicuring." (Id. at ¶ 22.)

The Individual Defendants Civitano and Pappacoda are the owners, officers, and directors of the Babylon Beauty School and the Long Island Beauty School, as well as other unspecified entities that provide cosmetology training in six different locations in Florida and New York. (Id. at ¶ 11.) The complaint does not allege which schools the Plaintiffs attended or their dates of attendance.

The Plaintiffs also seek to certify a class action pursuant to Fed. R. Civ. P. 23 and a collective action pursuant to Section 216(b) of the FLSA of individuals who from 2011 **to** 2014 were "uncompensated employees of the Defendants in their profit making personal service businesses." (Compl. at ¶ 14.)

Finally as to the parties, the Defendants John Doe Entities are unspecified entities operated by the Individual Defendants, which allegedly provided cosmetology training to the proposed class members during the relevant period. (Id. at ¶ 12.)

### 2. The New York and Florida Regulations Governing Cosmetology

#### a. The New York Regulations

Under Section 401 of the New York General Business Law ("NYGBL"), "no person shall engage in the practice of nail specialty, waxing, natural hair styling, esthetics or cosmetology . . . without having received a license to engage in such practice in the manner prescribed in this article." If an individual practices cosmetology without obtaining a license, he or she is subject to a civil penalty of "up to five hundred dollars for the first violation; one thousand dollars for a second such violation; and two thousand five hundred dollars for a third violation and any subsequent violation." N.Y. Gen. Bus. Law § 412 (McKinney)

In order to obtain a license, an individual must complete a cosmetology course, which consists of 1,000 hours of instruction at a licensed cosmetology school pursuant to a curriculum established by the New York Secretary of State. N.Y. Comp. Codes R. & Regs. tit. 19, § 162.4.

#### b. The Florida Regulations

Similarly, under the Florida Cosmetology Act, Fla. Stat. Ann. § 477.014, any individual seeking to practice cosmetology must obtain a license. To qualify for a license, the individual must have "received a minimum of 1,200 hours of training as established by the board, which shall include, but shall not be limited to, the equivalent of completion of services directly related to the practice of cosmetology" at a licensed school of cosmetology or a publicly operated cosmetology program. See Fla. Stat. Ann. § 477.019 (West). An individual who practices cosmetology without a valid license is subject to, among other penalties, a fine not to exceed $500 for each separate offense**;** a reprimand**;** and the revocation or suspension of a license. Fla. Stat. Ann. § 477.029 (West).

### 3. The Plaintiffs' Allegations

The Individual Defendants operated licensed cosmetology schools. (Am. Compl. at ¶ 23.) Students who attended the Defendants' schools were required to participate in clinics in which students performed personal cosmetology services on consumers — such as barbering, esthetics, or skin care — and in exchange, the consumers would pay a fee to the school. (Id.) For their work, the students received academic credit toward their New York and Florida State licensing requirements. (Id. at ¶ 36.) However, the students did not receive any monetary compensation. (Id. at ¶ 26.) Allegedly, the Defendants kept all of the revenue generated by their clinics. (Id.)

The Plaintiffs allege that the revenue generated by the clinics provides the Defendants with a substantial profit. (Id. at ¶ 24.) In addition, the Individual Defendants' schools enjoy much lower operating costs than for-profit salons, which are required to pay their employees a minimum wage. (Id. at ¶ 23, 32.) Thus, the Plaintiffs allege that the Defendants enjoy a significant competitive advantage over for-profit salons. (Id. at ¶ 30.)

The Plaintiffs further allege that the Individual Defendants required students working in the clinics: (i) to sell the Individual Defendants' products to consumers; (ii) to work at the clinics on Saturdays; and (iii) to provide any service requested by a consumer even if the requested service was not related to an area of cosmetology in which the student was seeking a license. (Id. at ¶ 40(e).)

Moreover, the complaint alleges that "some" of the class members were required by the Defendants to perform "manual labor and administrative functions including, but not limited to, janitorial, clerical or logistical functions," which were "essential and necessary" for the Defendants' business but which served "no educational purpose or benefit to the class members." (Id. at ¶ 40(d).)

5

The amended complaint contains no allegations specifically referencing the named Plaintiffs, including which of the Individual Defendants' schools they attended and when they attended those schools.  However, the complaint alleges that each of the named Plaintiffs worked in excess of five hundred hours in the clinics operated by the Individual Defendants from 2011 to 2014.  (Id. at ¶ 39.)

**B. Procedural History**

On August 14, 2013, the Plaintiffs commenced the present action.  On April 10, 2014, the Defendants filed a motion pursuant to Rule 12(b)(6) to dismiss the Plaintiffs' complaint.

In response, on April 28, 2014, the Plaintiff filed an amended complaint.  The amended complaint alleges that the Defendants violated (1) FLSA §§ 206, 207; (2) NYLL §§ 198, 652; and (3) Article X, Section 24 of the Florida Constitution.  (Id. at ¶¶ 51, 56, 61.)

The Plaintiffs seek (i) monetary damages in the form of unpaid and overtime wages; (ii) declaratory and injunctive relief restraining the Defendants from committing future violations of federal and state labor laws; and (iii) attorneys' fees and costs.   (Id. at ¶ 63.)

Pursuant to Rule 15(a)(1)(B), a party may amend a complaint without leave of the Court within 21 days after service of a motion under Rule 12(b).  The Plaintiffs filed an amended complaint on April 28, 2014, within 21 days of being served with the Defendants' first Rule 12(b)(6) motion to dismiss.  Therefore, the Plaintiffs were not required to seek leave of the Court prior to filing their amended complaint.

On May 12, 2014, the Defendants filed a motion pursuant to Rule 12(b)(6) to dismiss the amended complaint.  As such, the Court denies as moot the Defendant's first motion to dismiss the complaint and will consider the Defendants' second motion to dismiss the amended complaint.

## II. DISCUSSION

**A. Legal Standards**

As an initial matter, the Court notes that the Plaintiffs appear to argue that their FLSA claims are entitled to a more liberal pleading standard than Courts generally afford to claims when considering a Rule 12(b)(6) motion. (The Pls.' Opp'n Mem. of Law at 3–5.)

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court generally "accept[s] all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). However, a complaint must plead "enough facts to state a claim to relief that is plausible on its face" to survive a 12(b)(6) motion to dismiss. Bell Atl. Corp. v. Twomly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted); Luna v. N. Babylon Teacher's Org., 11 F.Supp.3d 396, 401 (E.D.N.Y. Apr. 7, 2014) ("Conclusory allegations of legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." (citing Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)).

The Plaintiffs offer no binding legal authority to support their contention that their FLSA claims are entitled to a more liberal pleading standard. To the contrary, courts in this Circuit have routinely applied the usual Rule 12(b)(6) standards to motions to dismiss FLSA claims.

See, e.g., <u>Olvera v. Bareburger Grp. LLC</u>, No. 14 CIV. 1372 (PAE), 2014 WL 3388649, at *2 (S.D.N.Y. July 10, 2014) (applying usual motion to dismiss standards to FLSA claim); <u>Apple v. Atl. Yards Dev. Co., LLC</u>, No. 11-CV-5550 (JG), 2012 WL 2309028, at *3 (E.D.N.Y. June 18, 2012) (same); <u>Diaz v. Consortium for Worker Educ., Inc.</u>, No. 10 CIV. 01848 (LAP), 2010 WL 3910280, at *1 (S.D.N.Y. Sept. 28, 2010) (same).

Accordingly, the Court will apply the usual motion to dismiss standards in deciding the present motion.

## B. As to the Extrinsic Documents Attached to the Plaintiffs' Memorandum of Law

When considering a Rule 12(b)(6) motion, a court can "only consider the complaint, any written instrument attached to the complaint as exhibits, or any documents incorporated in the complaint by reference." <u>Garnett-Bishop v. New York Cmty. Bancorp, Inc.</u>, No. 12-CV-2285 (ADS), 2014 WL 5822628, at *13 (E.D.N.Y. Nov. 6, 2014) (Spatt, J) (citing <u>Rothman v. Gregor</u>, 220 F.3d 81, 88-89 (2d Cir. 2000)); <u>see also</u> <u>Ahluawalia v. St. George's Univ., LLC.</u>, No. 14-CV-3312 (ADS), 2014 WL 6674615, at *8 (E.D.N.Y. Nov. 25, 2014)(Spatt, J) ("Furthermore, in deciding a motion to dismiss, the Court is confined to the allegations contained within the four corners of [the] complaint. . . . This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken.") (citing <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998)).

In response to the Defendants' motion to dismiss, the Plaintiffs attached to their opposition memorandum (i) a declaration by Lauren Goldberg, the Plaintiffs' counsel, regarding a conversation she allegedly had with an attorney of the New York State Education Department;

and (ii) a declaration of Michael Pallagrosi, a purported licensed cosmetologist, regarding the historical policies and practices of beauty school salons.  (The Pls.' Opp'n Mem. of Law, Exs. A, D.)

The Plaintiffs' reliance on these declarations is procedurally improper because the Plaintiffs did not refer to the facts or opinions averred in the declarations in the amended complaint.  Only in opposition to the Defendants' motion did the Plaintiffs, for the first time, include them.  Therefore, the Court declines to consider these declarations for purposes of the present motion.  Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd., No. 11-CV-5802 (PKC), 2014 WL 4175914, at *4 (E.D.N.Y. Aug. 20, 2014) ("[The] [p]laintiff did not refer to any affidavits nor incorporate them into her amended complaint.  Only in opposition to [the] [d]efendants' motion did [the] [p]laintiff, for the first time, include these documents. The [c]ourt, therefore, declines to consider the material contained in [the] [p]laintiff's affidavits[.]"); Murphy v. First Reliance Standard Life Ins. Co., No. 08-CV-3603 (DRH), 2010 WL 2243356, at *5 (E.D.N.Y. June 1, 2010) ("Moreover, a review of the Freifelder Affidavit reveals that the document is an affidavit of an expert in the area of economics, statistics and actuarial science, clearly an impermissible document for the [c]ourt to consider in ruling on a motion under Rule 12(b)(6)."); Johnson v. Levy, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) ("There is no basis for the Court to consider the affidavits of Jay Levy, Diane Levy, and Sue Campbell, the 51 Smith Street L.L.C. Operating Agreement, or the Johnsons' Credit Report, which are attached solely for the purpose of refuting the facts alleged in the complaint and would require credibility assessments and weighing of the evidence, which is not appropriate on a motion to dismiss.").

In addition, the Plaintiffs attach to their memorandum two documents purportedly authored by the New York State Assembly regarding an amendment to Section 400, *et seq.*, of

the NYGBL, which governs licensing requirements for individuals seeking to practice cosmetology. (The Pls.' Opp'n Mem. of Law, Exs. B, C.) Courts can take judicial notice of material that is part of the public record. Parks v. Town of Greenburgh, 344 F. App'x 654, 656 (2d Cir. 2009) ("[I]t is 'well established that a district court may rely on matters of public record in deciding a motion to dismiss under rule 12(b)(6)[.]'") (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998)).

However, the Plaintiffs do not offer an affidavit attesting to what these documents are and offers no foundation for the Court to conclude that these documents are authentic copies of New York State Assembly documents that are in the public record. Indeed, one of the documents appears to be an internal memo drafted by a law firm. (The Pls.' Opp'n Mem. of Law, Ex. C.) Accordingly, there is no basis before the Court for considering these documents on a motion to dismiss. See Reach Music Pub., Inc. v. Warner/Chappell Music, Inc., No. 09CIV.5580 (LTS), 2009 WL 3496115, at *3 (S.D.N.Y. Oct. 23, 2009) ("[The] Defendants also contend that the [c]ourt may consider the January 2006 Letter because it is referenced as an attachment in an email submitted in the New York state court action that [the] [p]laintiffs previously brought against [the] [d]efendants. However, Defendants have not alleged that the letter itself was submitted and it is not purported to be a public document. Accordingly, there is no basis for considering the January 2006 Letter a matter of public record properly before the [c]ourt on a motion to dismiss.").

**C. As to the Plaintiffs' FLSA Claim**

The Defendants argue that both (1) the Individual Defendants and (2) the Beauty Schools Defendants are not employers within the meaning of the FLSA, and therefore the Plaintiffs' FLSA claim fails as a matter of law. For the reasons set forth below, the Court disagrees.

### 1. The Beauty School Defendants

The FLSA requires that an employer compensate its employees for all hours worked at a prevailing minimum wage, and overtime pay of time and a half of the workers' regular hourly rate for each hour worked in excess of 40 hours per work week.  29 U.S.C. §§ 206(a)(1); 207(a)(2); see also Coley v. Vannguard Urban Imp. Ass'n, Inc., No. 12-CV-5565 (PKC), 2014 WL 4793825, at *2 (E.D.N.Y. Sept. 24, 2014) (same).

Only an employer may be held liable for FLSA violations.  29 U.S.C. § 207(a)(1).  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "The Supreme Court has emphasized that this is an expansive definition with 'striking breadth.'"  Olvera v. Bareburger Grp. LLC, No. 14 CIV. 1372 PAE, 2014 WL 3388649, at *2 (S.D.N.Y. July 10, 2014) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)); see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'") (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)).

To determine whether a defendant is an "employer" under the FLSA, the Court must examine the plaintiff's activities and decide whether the plaintiff and the defendant have an employer-employee relationship.  This determination "does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'"  Velez v. Sanchez, 693 F.3d 308, 326 (2d Cir. 2012) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947)).  In particular, the court must consider the "economic reality" of the parties' relationship on a "case-by-case basis" in light of the "totality of circumstances."  Barfield v.

<u>New York City Health & Hospitals Corp.</u>, 537 F.3d 132, 141-42 (2d Cir. 2008) ("[T]his court has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.").

In determining, the "economic reality" of the parties' relationship, the Second Circuit has identified "different sets of relevant factors based on the factual challenges posed by particular cases."  <u>Barfield</u>, 537 F.3d at 142.  The Department of Labor ("DOL") has issued a fact sheet setting forth a six-factor test to determine whether plaintiffs who participate in educational or vocational training programs are considered to be employees under the FLSA:

> (1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;

> (2) the training is for the benefit of the trainees or students;

> (3) the trainees or students do not displace regular employees, but work under their close observation;

> (4) the employer that provides the training derives no immediate advantage from the activities of the trainees or students, and on occasion his operations my actually be impeded;

> (5) the trainees or students are not necessarily entitled to a job at the conclusion of the training period; and

> (6) the employer and the trainees or students understand that the trainees or students are not entitled to wages for the time spent in training.

<u>Solis v. Laurelbrook Sanitarium & Sch., Inc.</u>, 642 F.3d 518, 524-25 (6th Cir. 2011) (quoting DOL Pub. 1297, at 4–5.); <u>see also</u> <u>Glatt v. Fox Searchlight Pictures Inc.</u>, 293 F.R.D. 516, 531 (S.D.N.Y. 2013) (setting forth similar factors for determining whether an internship may be unpaid).

Some district courts in this Circuit have adopted these factors because the DOL fact sheet was "promulgated by the agency charged with administering the FLSA and are a reasonable

application of it" is therefore "entitled to deference." See, e.g., Mark v. Gawker Media LLC, No. 13-CV-4347 (AJN), 2014 WL 4058417, at *3 (S.D.N.Y. Aug. 15, 2014) ("These factors provide a structured way of determining whether an intern qualifies as an employee, and some courts have adopted them as a reasonable interpretation of the FLSA promulgated by the agency charged with administering it."); Fraticelli v. MSG Holdings, L.P., No. 13 CIV. 6518 JMF, 2014 WL 1807105, at *2 (S.D.N.Y. May 7, 2014) ("The Second Circuit has not addressed the standard governing the trainee exception, but it is clear that six criteria enumerated in a Department of Labor ("DOL") fact sheet are at least relevant to, and perhaps dispositive of, the inquiry."); Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D. 516, 531 (S.D.N.Y. 2013) (finding that the DOL factors with respect to interns are "entitled to deference" because they were "promulgated by the agency charged with administering the FLSA and are a reasonable application of it.").

However, the courts have not considered any one factor to be dispositive and have weighed the DOL factors together with the totality of circumstances present in each case. See Velez v. Sanchez, 693 F.3d 308, 326 (2d Cir. 2012) ("The determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'" ) (citation omitted); Glatt, 293 F.R.D. at 531 ("No single factor is controlling; the test 'requires consideration of all the circumstances.'") (quoting Archie v. Grand Cent. P'ship, 997 F.Supp. 504, 532 (S.D.N.Y. 1998)); Xuedan Wang v. Hearst Corp., 293 F.R.D. 489, 494 (S.D.N.Y. 2013) ("All that said, I am also of the mind that the six factors in Fact Sheet # 71 ought not be disregarded; rather, it suggests a framework for an analysis of the employee-employer relationship.").

The Second Circuit has yet to directly address the particular factors relevant to students in vocational settings, such as the one at issue here. However, in Velez v. Sanchez, 693 F.3d 308,

329 (2d Cir. 2012), the Court of Appeals addressed the factors relevant to whether a domestic

services worker was an employee under the FLSA.  In so doing, the Court noted that with respect

to domestic workers, a court should "consider who is the primary recipient of benefits from the

relationship."  Id. at 330.  The court noted in *dicta* that determining who is the primary recipient

of the benefits at issue "is the approach taken by courts determining if trainees and students

providing services as part of their education are also employees."  Id.  In support of this

proposition, the court relied on three cases that are applicable to the circumstances of the present

case:  (i) Walling v. Portland Terminal Co., 330 U.S. 148, 152, 67 S.Ct. 639, 91 L.Ed. 809

(1947); (ii) Blair v. Wills, 420 F.3d 823, 829 (8th Cir. 2005); and (iii) Solis v. Laurelbrook

Sanitarium & Sch., Inc., 642 F.3d 518, 528 (6th Cir. 2011).

 In Walling, the first case relied on by the Second Circuit in Velez, the United States

Supreme Court affirmed a decision by a district court after a bench trial denying a claim by

trainees of a railroad company.  330 U.S. at 149, 67 S. Ct. at 640.

> The definition 'suffer or permit to work' was obviously not intended to stamp all
> persons as employees who, without any express or implied compensation
> agreement, might work for their own advantage on the premises of another.
> Otherwise, all students would be employees of the school or college they
> attended, and as such entitled to receive minimum wages . . . . Had these trainees
> taken courses in railroading in a public or private vocational school, wholly
> disassociated from the railroad, it could not reasonably be suggested that they
> were employees of the school within the meaning of the Act. Nor could they, in
> that situation, have been considered as employees of the railroad merely because
> the school's graduates would constitute a labor pool from which the railroad could
> later draw its employees.

Id. at 152–53.

 Similarly, in Blair v. Wills, 420 F.3d 823, 826 (8th Cir. 2005), the second case cited with

approval by the Second Circuit in Velez, the plaintiff, a former student of a boarding school,

asserted a FLSA claim against the boarding school and its administrators for failing to provide

him with compensation for performing various chores, including "laundry, cleaning, lawn-mowing, brush-clearing, painting, general maintenance, and other tasks." The Eighth Circuit affirmed the decision by the district court to grant the defendants' motion for a judgment as a matter of law on the plaintiff's FLSA claim. Id. at 829. In so holding, the court relied on the testimony of the administrators who stated that the "chores were an integral part of the educational curriculum at Mountain Park and Palm Lane, and those chores were primarily for the students', not the [defendants]', benefit." Id. Although the court noted that "having students perform chores helped defray certain costs that the [defendants] would have incurred had they hired employees to perform those tasks," it found that under the totality of circumstances, a reasonable jury could not conclude that the plaintiff's activities constituted employment under the FLSA. Id.

In Solis v. Laurelbrook Sanitarium & Sch., Inc., 642 F.3d 518, 521 (6th Cir. 2011), the third case cited by the Second Circuit in Velez, the Sixth Circuit affirmed the district court's determination after a bench trial that a non-profit boarding school was not an employer under the FLSA and thus did not owe students wages for participating in certain activities. Id. These activities included selling flowers on behalf of the school, repairing cars for the public, and performing housekeeping and kitchen-related tasks at an adjacent nursing home for which the students received credit toward a state certification. Id. at 519. The defendant, relying on Walling, argued that the FLSA does not apply to students attending vocational schools. Id. at 523. The Sixth Circuit rejected the defendant's argument, reasoning that "concluding that students are not employees simply because they are students at a vocational school is precisely the type of labeling courts must resist. Such an approach bypasses any real consideration of the

economic realities of the relationship and is antithetical to settled jurisprudence calling for consideration of the totality of the circumstances of each case." Id.

In weighing the totality of circumstances, the court in Solis, relying on the district court's findings and other evidence presented at the trial, determined that the primary benefit of the work flowed to the students and not the boarding school. Id. at 532. The court noted that the school received benefits from the students' work in the form of revenue. Id. However, the court found that the revenue was offset by, among other things, the fact that the students "do not displace compensated workers, and instructors must spend extra time supervising the students at the expense of performing productive work." Id. at 531. In addition, the court noted that there was testimony showing that the students received significant "intangible benefits" from the work that they performed at the school, such as "hands-on training comparable to training provided in public school vocational courses." Id.

The court in Solis distinguished its case from Marshall v. Baptist Hosp., Inc., 473 F.Supp. 465, 476–77 (M.D.Tenn. 1979), rev'd on other grounds, 668 F.2d 234 (6th Cir.1981). In that case, after a bench trial, the district court found that a hospital, which operated a two-year training program for x-ray technicians, was an employer under the FLSA. Id. The court reasoned that the students were performing work that employees of the hospital would normally perform, and thus, the students' work was of great benefit the hospital. Id. at 472–473. On the other hand, the court found that the hospital did not provide proper supervisors and training to the students. Id. Hence, the court concluded that the school conferred very little educational benefits to the students. Id. As such, the court found that the primary benefit of the students' work in the program ran to the hospital, not the students, and therefore, the hospital was an employer under the FLSA. Id.

16

In the present case, the Beauty Schools are not salons, and therefore, students understand that they are not entitled to a job after they complete their course work and, also, that they are likely not to be paid for the time that they spend working in the clinics. In addition, it appears that the students do not displace regular employees because the Beauty Schools are vocational schools and without students, the clinics would likely cease to exist. The court in <u>Solis</u> found similar considerations to suggest that the student-plaintiffs were not employees under the FLSA and therefore that the defendant-boarding schools should not be subject to liability. See <u>Solis</u>, 642 F.3d at 530-31 (noting that "[t]he district court found that Laurelbrook students do not displace compensated workers, and instructors must spend extra time supervising the students at the expense of performing productive work."); <u>cf.</u> <u>Glatt,</u> 293 F.R.D. at 531 ("Again, if [the plaintiff] had not performed these tasks for free, a paid employee would have been needed.").

However, the factor given the most weight by courts in determining whether a vocational school or program is an employer under the FLSA — whether the student or the school derive the most benefit from the student's work — could plausibly weigh in favor of the Plaintiffs. See <u>Velez</u>, 693 F.3d at 330 (2d Cir. 2012) ("A court should also consider who is the primary recipient of benefits from the relationship . . . . This is the approach taken by courts determining if trainees and students providing services as part of their education are also employees."). In particular, although the Plaintiffs received academic credit for their work in the Beauty Schools' clinics, they assert that the Beauty Schools forced them to perform manual labor and administrative functions as well as services in other fields of cosmetology that were unrelated to the field for which they sought a license. (<u>Id.</u> at ¶ 40.) Thus, the Plaintiffs allege that they received little benefit from their work in the clinics. (<u>Id.</u>)

On the other hand, as a result of the revenue generated from the Plaintiffs' work in the clinic, the Beauty Schools allegedly earned a substantial profit and had a competitive advantage over for-profit salons, which are required to pay their employees a minimum wage. (Id. at ¶¶ 28–30.) Under the circumstances, the Court finds that it would be plausible to conclude that the primary benefit of the Plaintiffs' work ran to the Beauty Schools, and therefore, they are employers subject to the minimum wage requirements of the FLSA. See Baptist Hosp., Inc., 473 F. Supp. at 476-77 ("Had the training program been found to be educationally sound the court might nevertheless have concluded that the bulk of the benefit inured to the trainees, but because the trainees were shortchanged educationally the court finds that the hospital was the primary benefactor from the relationship between it and the trainees.").

The Defendants argue that even accepting the Plaintiffs' allegations as true, the complaint should be dismissed. In particular, the Defendants' legal memorandum asserts that the discounted fees charged to customers are meant to cover the cost for supplies and for providing supervisors for its students and, thus, do not result in a substantial profit for the Beauty Schools. (The Defs.' Mem. of Law at 11, 14.) Rather, the Defendants state that the Beauty Schools' profits result solely from tuition, not the revenue generated from the clinics. (Id. at 15.) As such, the Defendants argue that the primary benefit of the Plaintiffs' work in the clinics runs to the Plaintiffs because they receive academic credit for their work that counts toward their license requirements under New York and Florida law. (Id.)

Although these facts alleged in the Defendants' legal memorandum appear to suggest that the Defendants received little benefit from the revenue generated by the students' work in the clinics, these are not facts alleged in the amended complaint and are indeed disputed by the Plaintiffs. Therefore, they are not proper for the Court to consider for purposes of the present

motion.  See Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999)

("[A] district court must confine its consideration 'to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken.'") (quoting Allen v. WestPoint–Pepperell, Inc.,

945 F.2d 40, 44 (2d Cir. 1991)).

Similarly, the cases relied on by the Defendants involved either bench trials or summary

judgment opinions where the factual records were far more developed than the factual record in

the present case.  See, e.g., Walling, 330 U.S. at 152, 67 S. Ct. at 641 ("Accepting the

unchallenged findings [of the district court] here that the railroads receive no 'immediate

advantage' from any work done by the trainees, we hold that they are not employees within the

Act's meaning.") (emphasis added); Lane v. Carolina Beauty Sys., Inc., No. 6:90CV00108

(WLO), 1992 WL 228868, at *1 (M.D.N.C. July 2, 1992) (concluding after a bench trial that the

defendant vocational school was an employer under the FLSA).  Therefore, the Court finds that

the Plaintiffs have alleged facts, which if true, are sufficient to show that the Beauty Schools are

employers subject to the FLSA.

### 2. The Individual Defendants

"Individual liability under the FLSA is premised upon 'personal responsibility for

making decisions about the conduct of the business that contributed to the violations of the

Act.'" Mendez v. U.S. Nonwovens Corp., No. 12-CV-5583 (ADS), 2014 WL 860328 (E.D.N.Y.

Mar. 5, 2014) (Spatt, J) (quoting Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 134 (S.D.N.Y.

2014)); see also Sethi v. Narod, 974 F. Supp. 2d 162, 186 (E.D.N.Y. 2013) ("The Second Circuit

. . . looks to the totality of the circumstances, and also considers the putative employer's level of

'operational control.'") (quoting Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013)).

In the corporate context, courts look to whether the individual: (1) "had the power to hire and fire the employees"; (2) "supervised and controlled employee work schedules or conditions of employment"; (3) "determined the rate and method of payment"; and (4) "maintained employment records." Irizarry, 722 F.3d at (2d Cir. 2013) (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)).

However, these factors are non-exclusive and ultimately a court looks to the totality of circumstances to determine if the "individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Ramirez v. Riverbay Corp., No. 13 CIV. 2367 (JGK), 2014 WL 3800489 (S.D.N.Y. Aug. 1, 2014) (quoting Irizarry, 722 F.3d at 109); see also Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 75-76 (2d Cir. 2003) ("[T]he "economic reality" test . . . has been distilled into a nonexclusive and overlapping set of factors."); Salomon v. Adderley Indus., Inc., 960 F. Supp. 2d 502, 509-10 (S.D.N.Y. 2013) ("'No single factor is dispositive, but 'control of labor relations is the central concern.'") (quoting Chen v. TYT E. Corp., No. 10 Civ. 5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012)).

In the present case, the Plaintiffs allege that the Defendants Civitano and Pappacoda are both "owner[s], officer[s], and/or director[s] of one or more" of the Beauty Schools. (Am. Compl. at ¶ 9.) With respect to Civitano, the Plaintiffs attach to their complaint, a description of Civitano allegedly obtained from a Beauty School Association website, which states that he "owns and operates eight schools[:] two under the [name,] Long Island Beauty Schools[;] four under [the name,] Hair Design Institute[.]" (Id., Ex. A.) The amended complaint further alleges that Pappacoda and Civitano were ultimately responsible for the decision not to compensate students for working in the Beauty Schools' clinics. (Id. at ¶ 49.)

The Court notes that these allegations are somewhat vague. For example, the amended complaint does not provide any non-conclusory details regarding the nature of the Individual Defendants' positions, what their duties entailed, how many employees they controlled, and how the policy at issue was implemented. However, at this early stage of the litigation, the Court finds that the Plaintiff have pled enough facts which, if true, plausibly suggest that they had "operational control" of the Beauty Schools and are thus subject to liability under the FLSA. See, e.g., Salomon, 960 F. Supp. 2d at 510 ("[The] [p]laintiffs . . . allege that the proposed individual defendants were owners and corporate officers of Adderley and ACI, and had authority over matters including payroll, personnel, and the supervision and hiring and firing of employees of both companies . . . . Under the FLSA, these allegations are sufficient to plausibly allege employer status."); Apolinar v. Global Deli & Grorcery, Inc., No. 12 CV 3446 (RJD) (VMS), 2013 WL 5408122, at *4 (E.D.N.Y. Sept. 25, 2013) ("The allegation that [the] [d]efendant Das was a principal of Global suggests that he possessed control over it and its employees . . . . The Complaint also alleges that Defendant Das authorized Global's pay policies and controlled the terms and conditions of Plaintiffs' work . . . . Taking into consideration the totality of the circumstances, [the] [d]efendant Das was an "employer" of Plaintiffs under the FLSA.")

Accordingly, the Court denies the Defendants' motion to dismiss the Plaintiffs' FLSA claims.

**D. As to the Plaintiffs' State Law Claims**

The Plaintiffs also assert claims under the Article X, Section 24 of the Florida Constitution and NYLL § 652.

**1. Subject Matter Jurisdiction**

Before turning to the merits of the parties' arguments, the Court must decide whether the Court has jurisdiction over the Plaintiffs' state law claims. See Mastafa v. Chevron Corp., 770 F.3d 170, 179 (2d Cir. 2014) ("It is natural for us to begin with the question of our subject-matter jurisdiction, which 'functions as a restriction on federal power.'"). Although neither party raises the issue of subject matter jurisdiction in their briefs, the Court is entitled to delve into this issue and may refer to any material in the record, not just the allegations in the complaint. See Velez v. Sanchez, 693 F.3d 308, 314 (2d Cir. 2012) ("We are entitled at any time during the proceeding to delve into the issue of whether there is a factual basis to support the exercise of subject matter jurisdiction, and we are not limited in our right to refer to any material in the record.") (internal quotation marks and citations omitted); see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 107 (2d Cir. 1997) ("'[T]he failure of the parties to contest the district court's authority to hear a case 'does not act to confer [federal] jurisdiction . . . since a challenge to subject matter jurisdiction cannot be waived and may be raised [either by motion or] *sua sponte* ' at any time.") (quoting United Food & Commercial Workers Union, Local 919 v. CenterMark Properties, 30 F.3d 298, 301 (2d Cir. 1994)).

As the named Defendants are not of diverse citizenship to the named Plaintiffs, the amended complaint urges this Court to exercise supplemental jurisdiction over the Plaintiffs' New York and Florida State law claims pursuant to 28 U.S.C. § 1367. Subsection (a) of section 1367 provides that a district court can exercise supplemental jurisdiction over any claims in the action that "form part of the same case or controversy" as the claims over which the Courts has original jurisdiction. For purposes of section 1367(a), claims "form part of the same case or

controversy" if they "derive from a common nucleus of operative fact." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks omitted). In the instant case, there is no question that the Plaintiffs' FLSA claim, on the one hand, and Florida and New York claims, on the other, "derive from a common nucleus of operative facts" since all of the claims arise out of the same allegation that the Defendants failed to provide proper compensation to the Plaintiffs for working in the Beauty School clinics.

However, even where a state law claim "form[s] part of the same case or controversy" as the federal claim, a court can still decline to exercise supplemental jurisdiction over the state law claim provided that claim: (1) "raises a novel or complex issue of State law"; (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) "the district court has dismissed all claims over which it has original jurisdiction"; and (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c) (2006).

Here, the Plaintiffs' NYLL § 652 claim does not appear to raise any novel questions of New York State law, especially considering that the central legal impediment to the Plaintiffs' NYLL claim — namely, whether the Defendants are "employers" subject to liability — is analyzed by district courts using the same standards applied to FLSA claims. Olvera v. Bareburger Grp. LLC, No. 14 CIV. 1372 (PAE), 2014 WL 3388649, at *4 (S.D.N.Y. July 10, 2014) ("The statutory standard for employer status under NYLL is nearly identical to that of the FLSA . . . . Courts in this District have regularly applied the same tests to determine, under the FLSA and NYLL, whether entities were joint employers.") (collecting cases); Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D. 516, 532 (S.D.N.Y. 2013) ("'[S]ince the NYLL's definition of employment is nearly identical to the FLSA's[,] courts in this circuit have held that the New

York Labor Law embodies the same standard for employment as the FLSA.'") (quoting <u>Cano v. DPNY, Inc.</u>, 287 F.R.D. 251, 260 n. 2 (S.D.N.Y. 2012)).

Moreover, the Court has not identified any exceptional circumstances that would permit the Court to decline supplemental jurisdiction over the Plaintiffs' NYLL claim. <u>See</u> <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d at 248 ("[O]ur sister circuits in the Seventh, Ninth, and District of Columbia Circuits all have determined that supplemental jurisdiction is appropriate over state labor law class claims in an action where the court has federal question jurisdiction over FLSA claims in a collective action."). Accordingly, the Court exercises supplemental jurisdiction over the Plaintiffs' NYLL claim.

However, the Court finds that the Plaintiffs' claim under Article 10, Section 24 of the Florida Constitution raises a novel question of law. Article X, Section 24 of the Florida Constitution provides that "[e]mployers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida . . . . Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment." Subsection F of Section 24 provides that implementing legislation is not required to enforce the constitutional provision but that the "state legislature may by statute . . . adopt any measures appropriate for the implementation of this amendment."

On December 12, 2005, the Florida legislature passed the Florida Minimum Wage Act, Fla. Stat. § 448.110 ("FMWA"), as the "exclusive remedy under state law for violations of s. 24, Art. X of the State Constitution." Fla. Stat. § 448.110(10).

The FMWA provides that prior to filing a claim in court for unpaid wages, the aggrieved party must: (i) "notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action"; and (ii) the written notice must "identify the minimum wage to which

the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice." Fla. Stat. Ann. § 448.110(6)(a).

Here, there is no dispute that the Plaintiffs did not provide the Defendants a written notice in accordance with the requirements of the FMWA. However, the Plaintiffs assert a claim under Article X, Section 24 of the Florida Constitution, not the FMWA, and Florida courts are divided on the issue of whether plaintiffs who have filed suit under Article X, Section 24 must nonetheless comply with the FMWA's pre-suit notice requirements. The Plaintiffs urge the Court to follow Throw v. Republic Enter. Sys., Inc., No. 8:06-CV-724-T-30 (JSM), 2006 WL 1823783, at *2 (M.D. Fla. June 30, 2006). There, the Court found the pre-notice requirement of the FMWA improperly sought to amend the right afforded to aggrieved parties under Article X, Section 24 of the Florida Constitution to commence a civil action in a court without complying with such requirements. Id. at *2 ("Through the enactment of Fla Stat. § 448.10, the Legislature attempts to add a requirement that must be fulfilled before an aggrieved party may exercise a right previously granted by the Constitution. This they cannot do."). Accordingly, the Court held that "it is not necessary for Plaintiff to fulfill the notice requirements found in § 448.10(6)(a) in order to allege a violation of Section 24, Article X of the Florida Constitution." Id.; see also Bates v. Smuggler's Enterprises, Inc., No. 210-CV-136-FTM-29 (JES), 2010 WL 3293347, at *4 (M.D. Fla. Aug. 19, 2010) ("The Court concludes that where, as here, plaintiff relies solely upon Article 10, Section 24, of the Florida Constitution to support her claim, she need not plead compliance with the notice requirements of Florida Statutes Section 448.110 in order to state a claim upon which relief may be granted.").

However, other Florida district courts have declined to follow the reasoning in Throw, and concluded that "any person alleging a violation of Fla. Const. art. X, § 24, must do so through the lens of the FMWA because the Florida Constitution does not create an independent constitutional right to bring suit to recover unpaid minimum wages." Nichols v. Lab. Corp. of Am., No. 2:13-CV-848-FTM-38 (SPC), 2014 WL 820656, at *4 (M.D. Fla. Mar. 3, 2014); see also Resnick v. Oppenheimer & Co. Inc., No. 07-80609-CIV, 2008 WL 113665, at *3 (S.D. Fla. Jan. 8, 2008) ("[B]ecause the specific implementing legislation passed (§ 448.110) does not prevent an individual from enforcing his rights under the Florida Constitution, the Court holds that § 448.110(6) is binding and enforceable on [the] [p]laintiff. Since [the] [p]laintiff failed to comply with this prerequisite to asserting a claim under Article X, Section 24, [the] [d]efendant's motion to dismiss Count II is granted."). The Defendants urge the Court to follow this line of cases and to dismiss the Plaintiffs' claim under the Florida Constitution for failure to comply with the FMWA's pre-suit notice requirement.

Rather than attempt to resolve this divided issue, the better course is to decline supplemental jurisdiction and allow the Eleventh Circuit or the Florida Supreme Court to resolve whether the pre-suit notice requirements of the FMWA infringes upon the rights guaranteed to plaintiffs under Article X, § 24, of the Florida Constitution. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."); Young v. New York City Transit Auth., 903 F.2d 146, 163-64 (2d Cir. 1990) ("Although the doctrine of pendent jurisdiction is one of flexibility and discretion, it is fundamental that '[n]eedless decisions of state law should be

avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'") (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)); Lopez v. Smiley, 375 F. Supp. 2d 19, 26-27 (D. Conn. 2005) ("[The [p]laintiff's] state constitutional claims are clearly novel, they are complex, and they are not well developed under Connecticut law . . . . this Court will refrain from exercising supplemental jurisdiction over all of [the plaintiff's] Connecticut constitutional claims.").

Accordingly, the Court declines to exercise jurisdiction over the Plaintiffs' claim under the Article X, Section 24 of the Florida Constitution. The Plaintiffs have failed to offer an independent basis of subject matter jurisdiction over their Florida claim. Therefore, the Court dismisses that claim for lack of subject matter jurisdiction.

### 2. As to Whether New York Law Prohibits the Plaintiffs From Being Paid For Their Services

The Defendants argue that any finding that the Plaintiffs are "employees" subject to the FLSA would necessarily conflict with Section 401 of the NYGBL, which states that "no person shall engage in the practice of nail specialty, waxing, natural hair styling, esthetics or cosmetology . . . without having received a license to engage in such practice in the manner prescribed in this article." (The Defs.' Mem. of Law at 18.) This argument is problematic for two reasons.

First, while it may be that unlicensed cosmetologists are not permitted to charge a fee for practicing cosmetology, the Defendants point to no legal authority precluding students who are ostensibly supervised by licensed cosmetologists from receiving a fee for their work. Indeed, under the Defendants' interpretation, the Beauty Schools themselves could not charge fees for cosmetology services because students performing those services are not licensed. The Court

finds such an interpretation of the NYGBL is overly broad, unsupported by legal authority, and would lead to absurd results. Accordingly, the Court does not find that New York law prohibits students from charging a fee for cosmetology services.

Second, even if the NYGBL could be construed to prevent the Beauty Schools from providing the Plaintiff compensation for their work in the clinics, the NYGBL would directly conflict with the FLSA to the extent that the Court finds that the Defendants are "employers" subject to the provisions of the FLSA. In such a scenario, the NYGBL would be preempted by the FLSA under the Supremacy Clause of the United States Constitution. See U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); see also Pac. Capital Bank, N.A. v. Connecticut, 542 F.3d 341, 351 (2d Cir. 2008) (noting that federal law preempts a state law "when compliance with the state statute would frustrate the purposes of the federal scheme.") (quoting Rice v. Norman Williams Co., 458 U.S. 654, 659, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982)). Accordingly, the Court rejects the Defendants' argument that Section 401 of the NYGBL prevents the Court from finding that the Defendants are employers under the FLSA.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that: (1) the Defendants' first motion to dismiss the complaint is denied as moot; (2) the Defendants' second motion to dismiss the amended complaint is denied with respect to the Plaintiffs' claims under the FLSA and the NYLL; and (3) the Plaintiffs' claim under Article X, Section 24 of the Florida Constitution is dismissed for lack of subject matter jurisdiction.

**SO ORDERED.**
Dated: Central Islip, New York
March 7, 2015


_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge